## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BAILEY NURSERIES, INC.,<br>a Minnesota corporation, | Case No.: _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMAND** |
| MONROVIA NURSERY COMPANY,<br>a California corporation, | |
| Defendant. | |

Plaintiff Bailey Nurseries, Inc. ("Bailey" or "Plaintiff"), a Minnesota corporation, by and through its undersigned attorneys, and for its Complaint against Defendant Monrovia Nursery Company ("Monrovia" or "Defendant"), a California corporation, states and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for infringement of Plaintiff's federally-registered JUMPSTARTS trademark under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of deceptive trade practices, trademark infringement, and unfair competition under the statutory and common laws of the State of Minnesota, all arising from the Defendant's marketing, advertising, promotion, offering for sale, and/or sale of Defendant's "Strong Starts" potted liners and "Prime Starts" for live plants.

## THE PARTIES

2.    Plaintiff Bailey Nurseries, Inc. is a Minnesota corporation and has its principal place of business at 1325 Bailey Road, Saint Paul, Minnesota 55119. Plaintiff is a horticultural company that grows, markets, and distributes plants and related nursery products to commercial growers and garden centers nationwide.

3.    Defendant Monrovia Nursery Company is a California corporation and has its principal place of business at 13455 SE Lafayette Highway, Dayton, Oregon 97114. Monrovia is a horticultural company that grows and sells shrubs, trees, and related live plant products in the United States.

## JURISDICTION AND VENUE

4.    This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b) because Plaintiff brings claims under the Lanham Act, 15 U.S.C. § 1125 *et seq.*

5.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are related to the claims within the Court's original jurisdiction and form part of the same case or controversy.

6.    Personal jurisdiction over Defendant is proper because, among other reasons, it has purposefully directed its business activities towards residents of Minnesota, including by soliciting, transacting with, and serving customers located in this State. Defendant regularly markets, distributes, and sells its plants and related horticultural products to Minnesota nurseries, garden centers, and commercial growers and continues to do so in competition with Plaintiff.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

### *Plaintiff and its JUMPSTARTS Mark*

8.      Established in 1905, Plaintiff Bailey Nurseries, Inc. is one of the largest wholesale nurseries in the United States known for its rigorous quality standards, professional expertise, and reliable delivery of comprehensive plant nursery-related products and solutions to commercial partners nationwide.

9.      Plaintiff has a long and distinguished history of plant innovation and brand creation, developing cultivars that have become mainstays in both commercial and consumer horticulture. Over the decades, Plaintiff has introduced and nurtured some of the industry's most recognizable brands, including the Endless Summer® collection of reblooming hydrangeas, the First Editions® line of unique trees and shrubs, and the Easy Elegance® series of hardy, low-maintenance roses—each reflecting the Plaintiff's commitment to research-driven development, superior performance, and accessible beauty for growers and gardeners alike.

10.     One such innovation is Plaintiff's JumpStarts® potted liner program.  Since 2016, JumpStarts® potted liners are trusted, high-performance option for growers seeking young plants that are reliably uniform and vigorously rooted. Designed to promote root strength and minimize transplant shock, JumpStarts® potted liners provide customers with a valuable head start in production, reducing grow time and improving overall crop success.

11.    Plaintiff is the owner of the valid and subsisting United States Trademark Registration No. 5059883 on the Principal Register of the United States Patent and Trademark Office for the trademark JUMPSTARTS for "live plants excluding cabbage, pea, sweet corn, Kentucky bluegrass and snapdragons" (hereafter, the "JUMPSTARTS Mark"). The JUMPSTARTS Mark was registered on October 11, 2016 and is incontestable.  A true and correct copy of the registration certificate for the JUMPSTARTS Mark is attached as Exhibit 1.

12.    Plaintiff has used the JUMPSTARTS Mark in commerce in Minnesota and across the United States continuously since 2016 in connection with the growing, distribution, offering for sale, sale, marketing, advertising and promotion of its potted liners for live plants.

13.    For example, Plaintiff's website, www.baileynurseries.com, prominently displays the JUMPSTARTS Mark, as shown below:





14.    Plaintiff also uses the JUMPSTARTS Mark on catalogs, brochures, and downloadable marketing material, as shown below:





15.     Plaintiff promotes and advertises its potted liners and live plants using the

JUMPSTARTS Mark on social media platforms, such as Facebook and Instagram:





16.    As a result of its widespread, continuous, and exclusive use of the JUMPSTARTS Mark to identify its potted liners for live plants and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the JUMPSTARTS Mark.

17.    The JUMPSTARTS Mark is well-known within the state of Minnesota and across the United States and has acquired distinctiveness among both the consuming public and Plaintiff's trade.

18.    Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the potted liners sold under the JUMPSTARTS Mark including through Plaintiff's marketing, advertising, and promotional efforts.

19.    Plaintiff distributes and sells its potted liners under the JUMPSTARTS Mark through standard commercial horticultural trade channels, including direct sales to commercial growers, wholesale nurseries, and garden-center retailers, as well as through established regional sales representatives and industry distributors.

20.    The potted liners Plaintiff offers under the JUMPSTARTS Mark are of high quality as they are produced under controlled greenhouse conditions, rooted to uniform standards, and delivered at a consistent developmental stage that enables predictable growth and strong early performance for consumers.

21.    As a result of Plaintiff's expenditures and efforts, the JUMPSTARTS Mark has come to signify the high quality of the potted liners designated by the JUMPSTARTS Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

### *Defendant's Unlawful Conduct*

22.    Upon information and belief, Defendant is engaged in commercial cultivation, marketing, and distribution of plants and nursery products to growers, retailers, and garden centers.

23.    Defendant is a direct competitor of Plaintiff in the commercial horticultural and plant distribution industry.

24.    Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its JUMPSTARTS Mark, Defendant adopted and began using two marks that are confusingly similar to Plaintiff's JUMPSTARTS Mark.

25.    In or around September 2025, Defendant introduced a new "Strong Starts" potted liner program. Defendant announced its new potted liner program under the mark STRONG STARTS via a press release published in trade publications serving wholesale greenhouse businesses, including *Greenhouse Grower* and *Greenhouse Management.*





26.    According to its press release, Defendant intends to offer a genetic variation of live plants within its STRONG STARTS potted liner program using the mark PRIME STARTS:

> Monrovia is applying the same quality and growing specifications used for its plant production in the liner program. Liners will feature exceptionally strong plants, grown to the company's exacting standards. Select Monrovia genetics will be available in the following sizes:
>
> - **Better Beginnings** #72
> - **Rooted and Ready** #24
> - **Prime Starts** #15

27.    The Infringing Marks adopted by Defendant (hereafter, the "Infringing Marks") are confusingly similar to Plaintiff's JUMPSTARTS Mark. The marks incorporate the same dominant term "STARTS," are similar in sight and sound, and are used on identical goods, namely, potted liners for live plants.

28.    Upon information and belief, Defendant has been engaged in the advertising, promotion, offering for sale, and sale of potted liners using the Infringing Marks in

Minnesota and throughout the United States. Defendant's STRONG STARTS potted liners and PRIME STARTS live plants are positioned as offering the same type of early-stage, ready-to-grow plants that Plaintiff provides under the JUMPSTARTS Mark.

29.    Upon information and belief, Defendant has marketed, advertised, promoted, offered for sale, and sold its potted liners and live plants under the Infringing Marks to the very same growers and horticultural buyers through identical industry channels, directly overlapping with the customers Plaintiff has long served.

30.    Defendant's adoption and/or use of the Infringing Marks in commerce is subsequent to Plaintiff's adoption, use and registration of its JUMPSTARTS Mark.

31.    Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's potted liners and live plants and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's potted liners and live plants originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

32.    Upon information and belief, Defendant's acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's JUMPSTARTS Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's potted liners and live plants to the Defendant.

33.    Plaintiff will be further harmed as consumers will purchase goods under the Infringing Marks believing them to be a JUMPSTARTS potted liner or to be affiliated with, associated with, connected to, or sponsored by Plaintiff, and thereby forego purchase

of the JUMPSTARTS potted liners, resulting in loss of sales to Plaintiff from Defendant's unfair competition.

34.    Defendant's infringing use of the confusing similar Infringing Marks will diminish the value of Plaintiff's JUMPSTARTS Mark and endanger the ability of Plaintiff's JUMPSTARTS Mark to serve as a unique and distinctive source indicator for Plaintiff and Plaintiff's goods.

35.    Upon information and belief, Defendant's potted liners sold under the Infringing Marks are lower in quality than that of Plaintiff's JUMPSTARTS potted liners.

36.    Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

37.    Defendant's conduct is willful and must be enjoined so it cannot freeride on the goodwill associated with the JUMPSTARTS Mark that Plaintiff has worked so hard to create.

## CAUSES OF ACTION

### COUNT I
### Federal Trademark Infringement
### Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

38.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

39.    Plaintiff owns all rights to the JUMPSTARTS Mark for use in connection with live plants and related goods.

40.    Plaintiff has continuously used the JUMPSTARTS Mark in connection the promotion, advertising, marketing, offering for sale, and sale of potted liners and live plants

since 2016, and has invested considerable resources to develop public recognition, brand recognition, brand strength, and consumer goodwill in the JUMPSTARTS Mark.

41.    As a result of these efforts, consumers associate the JUMPSTARTS Mark with Plaintiff and the high-quality live plants that Plaintiff provides.

42.    Defendant has no authorization to use the JUMPSTARTS Mark or any mark confusingly similar thereto.

43.    Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's potted liners and live plants, and is likely to cause consumers to believe, contrary to fact, that Defendant's potted liners and live plants are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

44.    Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

45.    Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the JUMPSTARTS Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

46.    Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

47.     Plaintiff has suffered damages as a result of Defendant's actions in an amount to be proven at trial.

## COUNT II
### False Designation of Origin and Unfair Competition
### Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

48.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

49.     Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's potted liners and live plants, and is likely to cause consumers to believe, contrary to fact, that Defendant's potted liners and live plants are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

50.     Defendant is wrongfully using confusingly-similar marks to Plaintiff's JUMPSTARTS Mark to create a false association between Defendant and Plaintiff.

51.     Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

52.     Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

53.     Defendant's conduct therefore constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

55.     Plaintiff has suffered damages as a result of Defendant's actions in an amount to be proven at trial.

## COUNT III

### Violation of Minnesota Deceptive Trade Practices Act
### Under Minn. Stat. §§ 325D.43 to 325D.48

56.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

57.     The JUMPSTARTS Mark is a trademark as defined in Minn. Stat. § 325D.43, subd. 7.

58.     Defendant has engaged in several deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, including without limitation engaging in conduct that causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Plaintiff's goods; and engaging in conduct that causes a likelihood of confusion or misunderstanding as to affiliation, connection, or association between Plaintiff and Defendant.

59.     Defendant's use of the Infringing Marks is likely to cause confusion, cause mistake, and/or to deceive consumers as to the source of Defendant's services, connection, approval, or association with Plaintiff.

60.     Defendant willfully engaged in the above-described trade practices, knowing them to be deceptive.

61.    As a result of Defendant's conduct, Plaintiff is entitled to an injunction and attorneys' fees under Minn. Stat. § 325D.45.

## COUNT IV
**Common Law Trademark Infringement**

62.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

63.    Plaintiff's JUMPSTARTS Mark is distinctive.

64.    Defendant has no authorization to use the JUMPSTARTS Mark or any mark confusingly similar thereto.

65.    Upon information and belief, Defendant has used the Infringing Marks to solicit business for services identical or similar to those offered and provided by Plaintiff.

66.    Defendant's unauthorized use of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's potted liners and live plants, and is likely to cause consumers to believe, contrary to fact, that Defendant's potted liners and live plants are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

67.    Defendant's conduct therefore constitutes trademark infringement under the common law.

68.    Defendant's actions were willful, deliberate, and committed with intentional disregard of Plaintiff's rights.

69.    Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff

16

and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

70.     Plaintiff has suffered damages as a result of Defendant's conduct in an amount to be proven at trial.

## COUNT V
### Common Law Unfair Competition

71.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

72.     Plaintiff owns all rights to the JUMPSTARTS Mark for use in connection with live plants and related goods.

73.     Defendant has no authorization to use the JUMPSTARTS Mark or any mark confusingly similar thereto.

74.     Defendant's use of the Infringing Marks in connection with potted liners and live plants is likely to cause confusion, cause mistake, and/or to deceive consumers as to the source of Defendant's goods, connection, approval, or association with Plaintiff.

75.     Defendant's conduct constitutes unfair competition in violation of Plaintiff's rights.

76.     Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

77.     Plaintiff has suffered damages as a result of Defendant's conduct in an amount to be proven at trial.

## REQUEST FOR A JURY TRIAL

78.     Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

1.     That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a).

2.     That Defendant has violated the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44.

3.     That Defendant has violated Plaintiff's rights under the common law.

4.     Permanently enjoining Defendant and all those acting in concert with it from:

    a.     selling, marketing, advertising, promoting, or authorizing any third party to sell, market, advertise, or promote Defendant's potted liners, live plants, or related goods bearing the mark STRONG STARTS, PRIME STARTS, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's JUMPSTARTS Mark;

    b.     engaging in any activity that infringes Plaintiff's rights in its JUMPSTARTS mark;

    c.     engaging in any activity constituting unfair competition with Plaintiff;

    d.     making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's potted

liners or live plants are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's potted liners or live plants are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendant;

e.    using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

f.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark STRONG STARTS or PRIME STARTS or any other mark that infringes or is likely to be confused with Plaintiff's JUMPSTARTS mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

g.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

5.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized by, or

associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods.

6.      Directing Defendant to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Infringing Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's JUMPSTARTS mark;

7.      Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

8.      Awarding Plaintiff damages in an amount to be determined at trial, including income and profits Plaintiff lost and may lose as a result of Defendant's unlawful conduct;

9.      Awarding Plaintiff any additional damages to which it is entitled for Defendant's trademark infringement, deceptive trade practices, and unfair competition, including without limitation punitive damages and disgorgement of any profits Defendant obtained as a result of Defendant's unlawful conduct;

10.    Awarding Plaintiff its costs and attorneys' fees; and

11.    Granting such further relief that this Court deems just and equitable.

Dated:  December 22, 2025                 Respectfully submitted,


                                          */s/ Luke P. de Leon*
                                          R. Scott Johnson (*pro hac vice forthcoming*)
                                          **FREDRIKSON & BYRON, P.A.**
                                          111 East Grand Avenue, Suite 301
                                          Des Moines, IA 50309-1884
                                          Telephone:  (515)-242-8900
                                          Facsimile: (515) 242-8950
                                          Email:  rsjohnson@fredlaw.com

                                          Laura L. Myers (#0387116)
                                          Luke P. de Leon (#0401756)
                                          **FREDRIKSON & BYRON, P.A.**
                                          60 South Sixth Street, Suite 1500
                                          Minneapolis, MN  55402-4400
                                          Telephone:  (612) 492-7000
                                          Facsimile:  (612) 492-7077
                                          Email:  lmyers@fredlaw.com
                                                     ldeleon@fredlaw.com

                                          ***Attorneys for Plaintiff***
                                          ***Bailey Nurseries, Inc.***